(44 Misc. Rep. 20.)

### PEOPLE ex rel. PATTERSON v. FLYNN, Warden.

(Supreme Court, Special Term, New York County. June, 1904.)

1. CRIMINAL LAW—COMMITMENT PENDING PRELIMINARY EXAMINATION.

　　The affidavit of a police officer, filed with a coroner at an inquest, stated that he had found an unconscious man, with a revolver in his pocket, dying in a hansom cab, lying across the lap of a woman whom the police officer arrested without a warrant; that the man thereafter died. *Held* to justify the commitment of the woman during the preliminary examination; it affording probable cause, within Code Cr. Proc. § 773, to believe that a homicide had been committed, and that the woman was connected with it.

Application by the people, on the relation of Nan Patterson, for writ of habeas corpus to William Flynn, warden. Writ dismissed.

Levy & Unger, for relator.

William T. Jerome, Dist. Atty. (Edward Sandford, Asst. Dist. Atty.), for respondent.

CLARKE, J. To the writ of habeas corpus the keeper of the city prison makes return that he holds relator under custody as being the person named in a paper which is as follows:

"City and County of New York, ss.:

"Temporary Commitment to the Keeper of the City Prison and Bridewell, in said City.

"In the name of the People of the State of New York you are hereby commanded to receive into your custody, and safely keep for examination, the body of Nan Patterson, who is charged, before me, with having caused the death of Cæsar Young.

"Coroner's Office, June 4, 1904.　　　　　Wm. Josephs, Junior, Officer.

　　　　　　　　　　　　　　　　　　　　　　　　"Nicholas T. Brown, Coroner."

To the writ of certiorari, addressed to the coroner, there has been returned to the court the original papers, which, in view of the short time allowed for the return, were handed in, instead of a formal, certified copy thereof, which, for the purposes of the record, may be hereafter supplied.

Section 773 of the Code of Criminal Procedure provides:

"Whenever a coroner is informed that a person has been killed or dangerously wounded by another, or has suddenly died under such circumstances as to afford a reasonable ground to suspect that his death has been occasioned by the act of another by criminal means, or has committed suicide, he must go to the place where the person is and forthwith inquire into the cause of death or wounding, * * * summon not less than nine nor more than fifteen persons, qualified by law to serve as jurors, if such death or wounding be of a criminal nature, to appear before him forthwith at a specified place, to inquire into the cause of the death or wound, and if it shall appear from the sworn examination of the informant or complanant, or if it shall appear by the evidence taken on or during the inquisition or hearing, that any person or persons are chargeable with the killing or wounding, or that there is probable cause to believe that any person or persons are chargeable therewith, and if such person or persons be not in custody, he must forthwith issue a warrant for the arrest of the person or persons charged with such killing or wounding; and upon the arrest of any person or persons chargeable therewith, he must be arraigned before the coroner for examination, and the said coroner shall have power to commit the person or persons so arrested to await the result of the inquisition or decision."

The papers disclose abundant justification for the institution of an inquiry by the coroner into the cause of death. The death occurred on the morning of June 4, 1904. The writs were sued out at about 4 o'clock on the afternoon of Monday, June 6th. The record does not disclose that any jurors have been summoned, and so such jurors had not appeared before the coroner, so far as the record shows, at the time of the issuance of the writ. The affidavit of the officer who took relator into custody does not, in terms, charge the relator with any crime. It simply narrates the circumstances attending the death. The coroner has power, after inquisition found, to issue his warrant, and also, upon evidence taken during the inquisition, to do the same. Upon such evidence he also may, after arraignment, commit the person arrested to await the result of the inquisition. The statute says:

"If it shall appear from the sworn examination of the informant or complainant, or it shall appear from the evidence taken on or during the inquisition or hearing * * * that any person * * * is chargeable with the killing, or that there is probable cause to believe that any person is chargeable therewith, if such person be not in custody he must forthwith issue a warrant for the arrest."

I am inclined to think that, if the affidavit of the officer be sufficient, the coroner was warranted in committing relator. She was in custody. Being in custody, there seems to have been no necessity for the issuance of a warrant to accomplish what already existed. The affidavit sets forth the finding of an unconscious man, dying from a pistol-shot wound, with a revolver in his right-hand coat pocket, lying across the lap of a woman in a hansom cab; that the man died; and that the officer was present at the autopsy performed on his body. It was clearly a case of suicide or homicide. The position of the wound and the revolver seems to me to establish, within the meaning of the statute, probable cause to believe that it was homicide, and not suicide. Such facts appearing from the sworn examination of the informant upon his own personal knowledge, it seems to me that the coroner had warrant, and that it was his duty, under the statute, to issue his commitment. The effect of the commitment is simply to keep in custody the person who there is reasonable cause to believe is chargeable with the killing, through the period of preliminary investigation. While the papers are not as clear and full as is desirable, yet I think they disclose all the substantial matters required by the statute. My conclusion is that the writ must be dismissed, and the relator remanded.

Writ dismissed, and relator remanded.